## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Joan Price,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Midland Funding LLC, and<br>Messerli & Kramer, P.A.,<br><br>　　　　　Defendants. | Case No. 18-cv-509 (SRN/SER)<br><br><br>**ORDER** |

Darren B. Schwiebert, DBS Law LLC, 301 Fourth Ave. S., Ste. 280N, Minneapolis, MN 55415, for Plaintiff.

Derrick N. Weber and Stephanie Shawn Lamphere, Messerli & Kramer, 3033 Campus Dr., Ste. 250, Plymouth, MN 55411, for Defendants.

SUSAN RICHARD NELSON, United States District Court Judge

## I.　INTRODUCTION

This matter is before the Court on Plaintiff's Motion for Attorneys' Fees [Doc. No. 12] and Plaintiff's Motion for Leave to File a Reply, or in the Alternative, to Amend Deadlines Pursuant to Rule 6 ("Plaintiff's Motion to Amend Deadlines") [Doc. No. 19]. For the reasons set forth below, the Court grants Plaintiff's Motion to Amend Deadlines and finds that Plaintiff is entitled to a total of $6,080 in attorneys' fees.

## II.　BACKGROUND

On February 21, 2018, Plaintiff Joan Price filed this suit against Midland Funding, LLC, ("Midland") and Messerli & Kramer, P.A., ("Messerli & Kramer"), under the Fair

1

Debt Collections Practices Act, ("FDCPA"), 15 kuntzU.S.C. § 1692, *et seq.* Price, who is disabled and relies on disability income as her sole means of support, alleges that Midland retained Messerli & Kramer as its counsel to collect on a consumer credit card debt allegedly owed by Price. (Compl. ¶7 [Doc. No. 1].) Price asserts that both Midland and Messerli & Kramer are "debt collectors," as that term is defined under the FDCPA. (*Id.* ¶¶ 6–7.) Price alleges that in underlying litigation in 2017, Midland and Messerli & Kramer served her with a summons and complaint concerning the alleged debt owed to Midland. (*Id.* ¶ 9.) She contends that she served a pro se answer, denying the primary allegations against her. (*Id.* ¶ 12.)

Price further alleges that in early February 2018, Midland moved for judgment on the pleadings, attaching to its motion a "true and correct copy" of the "Answer to the Complaint," ("Answer"). (*Id.* ¶¶ 13–18.) In the instant action, however, Price alleges that this purported Answer, which contained admissions about "a debt" of some kind, had nothing to do with her. (*Id.* ¶ 18.)

In addition, Price alleges that Defendants served her with a declaration seeking costs and disbursements for fees incurred in the underlying action, including approximately $77 for a "Hearing Fee" and $304 for "Fees of Clerk of Court." (*Id.* ¶ 21.) But in her FDCPA action here, Price contends that these statements were false, as the underlying action had not been filed as of February 8, 2018, therefore Defendants had not paid or incurred any filing fees or costs. (*Id.* ¶ 22.) On February 13, 2018, Defendants filed the underlying action in Hennepin County District Court, along with their

supporting documents and requests, including the purported Answer and declaration seeking costs and disbursements. (*Id.* ¶¶ 24–25.)

On February 21, 2018, Price filed the instant action in this Court. Price asserts that Defendants violated the FDCPA by falsely representing the amount or legal status of the alleged debt, using false representations and unfair and unconscionable means to attempt to collect a debt, and attempting to collect an amount not authorized by contract or law. (*Id.* ¶ 38.) Because of these alleged FDCPA violations, Price sought actual damages, statutory damages up to $1,000, and reasonable attorneys' fees and costs. (*Id.* ¶ 41) (citing 15 U.S.C. § 1692k(a)(1)–(3).)

On April 10, 2018, Defendants offered Price a total judgment of $1,001, inclusive of all damages, "plus Plaintiff's reasonable attorneys' fees and costs, in an amount to be agreed upon by all counsel or, alternatively, as determined by the Court," with respect to Price's claims here. (Offer of Judgment ¶ 3 [Doc. No. 10-1].) On April 24, 2018, Plaintiff filed a Notice of Acceptance of Offer of Judgment [Doc. No. 10], stating that she accepted Defendants' offer. With respect to an award of attorneys' fees and costs, Price's Notice stated, "The parties are attempting to reach an agreement on fees and costs, but if an agreement is not reached, Plaintiff will petition the Court for such an award." (Notice of Acceptance at 1.) The Clerk of Court entered judgment in Price's favor on April 24, 2018 [Doc. No. 11].

Shortly thereafter, Price's attorney, Darren Schwiebert, requested $4,480 in attorneys' fees and costs from Defendants. (*See* Defs.' April 27, 2018 Letter at 1, 3 [Doc. No. 15-2].) On April 27, 2018, Derrick Weber, counsel for Defendants, objected.

(*Id.*) Weber countered with an offer to pay attorneys' fees of $1,750, reflecting a lower hourly billing rate than Plaintiff had requested and reduction in billed time. (*Id.* at 3.)

On May 22, 2018, Schwiebert filed the instant motion for attorneys' fees. Plaintiff's requested total amount of $6,080 includes additional fees for his work in preparing and submitting the fee petition itself. (*See* Billing Statement at 1–2 [Doc. No. 15-3].)

## III. DISCUSSION

The FDCPA allows a successful plaintiff to collect "the costs of the action, together with a reasonable attorneys' fee as determined by the court." 15 U.S.C. § 1692k(a)(3). "Fees are still awarded under this rule, even when there is an offer of judgment under Rule 68." *Ash v. Malacko*, No. 14-cv-590 (PJS/JJG), 2014 U.S. Dist. LEXIS 123493, at *3 (D. Minn. Aug. 18, 2014) (citing *Fletcher v. City of Ft. Wayne*, 162 F.3d 975, 976–77 (7th Cir. 1998)).

Defendants argue that Plaintiff is not entitled to attorneys' fees for the following reasons: (1) the petition is untimely; (2) counsel's fee agreement is void as a matter of public policy; and (3) the requested amount of fees is unreasonable. (Defs.' Opp'n at 3–5 [Doc. No. 17].) However, if the Court decides that a fee award is nevertheless warranted, Defendants maintain that the award should be no more than $1,500. (*Id.* at 17.)

### A. Timeliness

A party seeking attorneys' fees and costs is to required make such a claim under Rule 54(d) no later than 14 days after the entry of judgment. Fed. R. Civ. P. 54(d)(2)(B)(i). As noted, judgment in this case was entered on April 24, 2018, and

4

Plaintiff filed the instant motion on May 22, 2018. Defendants argue that Plaintiff is not entitled to an award of attorneys' fees because the motion was not filed within the 14-day period under Rule 54(d)(2)(B). (Defs.' Opp'n at 3–4.) In response to this argument, Plaintiff moves for permission to file a reply memorandum or, alternatively, to amend the deadline for filing the fee petition pursuant to Rule 6(b).[1] (Pl.'s Mem. Supp. Mot. to Amend Deadlines at 1 [Doc. No. 20].)

Here, in the Offer of Judgment, Defendants expressly offered Plaintiff reasonable attorneys' fees and costs, to be agreed upon by the parties, or in the event of disagreement, to be determined by the Court. (Offer of Judgment at 1.) Plaintiff's acceptance of Defendants' offer reflects that understanding. (Notice of Acceptance at 1.)

While Plaintiff argues in the Motion to Amend Deadlines that the Notice of Acceptance essentially served as a substitute for a motion for attorneys' fees, the Court disagrees. Nevertheless, under the circumstances here, granting an after-the-fact extension is warranted. As the commentators to Rule 54 have noted, the rule does not require that the motion for attorneys' fees be accompanied by evidence related to attorneys' fees at the time of filing the motion, but that the petitioner file materials "sufficient to alert the adversary and the court that there is a claim for fees, and the amount of such fees (or a fair estimate)." Fed. R. Civ. P. 54 1993 Advisory Cmte. Notes,

---

[1] Although Plaintiff's Motion to Amend Deadlines cites Rule 6(d) as the source of authority for an extension of time, the Court construes this as a reference to Rule 6(b). Rule 6(d) refers to three days of additional time after certain kinds of service, which is inapplicable here. *See* Fed. R. Civ. P. 6(d). But Rule 6(b) provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B).

1993 Amendment, Subd. (d), ¶ 2(B). Given that Defendants were not only on notice that Plaintiff would seek attorneys' fees, but had expressly *agreed to pay* reasonable attorneys' fees, (*see* Offer of Judgment at 1), consideration of the merits of Plaintiff's request does not prejudice Defendants. Pursuant to Rule 6(b), the Court therefore extends the deadline for Plaintiff's filing to the date of filing, finding that Plaintiff has demonstrated good cause, in light of the Offer of Judgment and Plaintiff's Acceptance of the Offer of Judgment, for consideration of the merits of the fee petition.

### B. Fee Agreement

Defendants also argue that Plaintiff's fee request should be denied because the fee agreement between Price and her counsel is "void as a matter of public policy." (Defs.' Opp'n at 4.) Defense counsel attests that the fee agreement states, in pertinent part, "You hereby unequivocally and irrevocably assign to us all right, title, and interest in any attorneys' fees recovered or awarded in this case, whether negotiated between the parties or ordered by the Court." (Weber Decl. ¶ 8 [Doc. No. 18].) Defendants argue that this provision violates Minnesota Rule of Professional Conduct 1.8(i), which generally prohibits a lawyer from obtaining a proprietary interest in a client's cause of action, subject to certain exceptions.[2]

Minnesota Rule of Professional Conduct 1.8(i) provides:

A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:

---

[2] Defendants cite Minnesota Rule of Professional Conduct 1.8(h)(2)(i), (Defs.' Opp'n at 4), which appears to contain the language now found in Rule 1.8(i).

> (1) acquire a lien authorized by law to secure the lawyer's fee or expenses; and
>
> (2) contract with a client for a reasonable contingent fee in a civil case.

Minn. R. of Prof'l Conduct 1.8(i) (2018).

The Court finds no violation of this Rule. Here, the language in the fee agreement reserves counsel's right to any attorneys' fees awarded in an action under the FDCPA—a statute that expressly contemplates an award of reasonable attorneys' fees to a successful plaintiff, as discussed above. The reservation in the fee agreement is essentially a right to a lien or contingent fee that is exempted from Rule 1.8, quoted above. As Plaintiff's counsel explains, Price hired him on a contingency-fee basis. (Schwiebert Decl. ¶ 9 [Doc. No. 15].) Therefore, Schwiebert "took the case knowing that [he] risked going uncompensated for [his] legal work unless [he] obtained an award of attorneys' fees either through a victory at summary judgment or trial, a settlement, or an offer of judgment." (*Id.*) In exchange for the reservation of his right to later recover attorneys' fees from Defendants, he agreed to cover all litigation expenses up front, knowing that he risked reimbursement for his work if Plaintiff did not obtain a successful result. (*Id.*) The language in the fee agreement simply apprised Price that if reasonable fees were awarded, they would inure to her attorney. This is a far cry from the type of conduct that the Minnesota Supreme Court has found to constitute an improper pecuniary interest. *See, e.g.*, *In re Dillon*, 371 N.W.2d 548 (Minn. 1985) (finding ethical violation where attorney representing client in a contingency-fee matter borrowed $65,000 from client to repay a business debt, securing the loan by the attorneys' contingent fee, and failed to

disclose the adverse nature of their interests); *In re Ray*, 368 N.W.2d 924 (Minn. 1985) (finding ethical violations where attorney used funds in clients' trust funds for loans and investments in which the attorney had a substantial personal interest). The Court rejects this basis for denying Plaintiff's motion for attorneys' fees and notes that "every attorney has an interest in being paid for his services." *Maus v. Toder*, 681 F. Supp. 2d 1007, 1016 (D. Minn. 2010).

### C. Reasonableness

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The resulting figure is known as the "lodestar," which is strongly presumed to be the proper award. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). The fee applicant bears the burden of producing evidence to support the number of hours worked and should make a good faith effort to exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 433-34. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* at 433.

As to the reasonableness of his hourly rate, Schwiebert submits a declaration, the billing statements in this matter, and his curriculum vitae [Doc. No. 15-1]. He attests that he has practiced law since 1995 and is an attorney in good standing. (Schwiebert Decl. ¶ 3.) He further asserts that he is an experienced federal litigator, who has handled over 50 FDCPA claims on behalf of consumers, including a successful appeal to the Eighth Circuit Court of Appeals. (*Id.* ¶¶ 6–8.) At the time that he undertook Price's

representation, Schwiebert agreed to work on a contingency-fee basis, with a billing rate of $400 per hour. (*Id.* ¶ 9.) He states that this is his current hourly rate for consumer law clients, including clients billed by the hour, and is consistent with billing rates for attorneys with over 20 years of experience. (*Id.* ¶ 23.) Schwiebert also notes that in December 2017, a Hennepin County district court judge issued a fee award order finding that Schwiebert's $400 hourly rate was reasonable. (*Id.* ¶ 24.)

In addition to his own declaration, Schwiebert submits a declaration from Twin Cities attorney David P. Swenson, of Larkin Hoffman. Swenson, also licensed and in good standing in Minnesota, states that he has practiced law at other professional law firms in the Twin Cities, and is familiar with the prevailing norms and practices for attorneys' billing fees within the Twin Cities. (Swenson Decl. ¶¶ 5, 8 [Doc. No. 14].) He has known Schwiebert since 1995, has consulted with him numerous times, and on one occasion, retained Schwiebert to assist in a collections matter. (*Id.* ¶¶ 9, 10.) Swenson states that Schwiebert is a well-regarded federal litigator with specialized experience in consumer law and the FDCPA. (*Id.* ¶ 12.) Swenson believes that Schwiebert's billing rate of $400 per hour for work performed in one of his areas specialty areas is "on the low end of the range of reasonable hourly fees charged by lawyers of comparable experience and expertise." (*Id.* ¶ 13.)

In support of his petition, Schwiebert also submits portions of a 2015–16 report by Ronald L. Burdge (the "Burdge Report") [Doc. No. 15-4] on attorney billing rates in the Twin Cities legal market that Defendant Messerli & Kramer filed in opposition to a

FDCPA fee petition in *Kuntz v. Messerli & Kramer, P.A.*, No. 16-cv-2676 (JNE/BRT), 2017 U.S. Dist. LEXIS 123498 (D. Minn. Aug. 4, 2017).

In opposition to the merits of Plaintiff's motion, Defendants argue that Plaintiff's counsel's hourly rate is unreasonable, (Defs.' Opp'n at 9–11), and the number of hours claimed were neither reasonably expended nor reasonably incurred. (*Id.* at 12–17.)

### 1. Hourly Rate

The reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of comparable skills, experience and reputation. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). In determining the reasonable hourly rate, "district courts may rely on their own experience and knowledge of prevailing market rates." *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005). The party seeking a fee award is responsible for providing evidence of hours worked and the rate claimed. *Wheeler v. Mo. Highway & Transp. Comm'n*, 348 F.3d 744, 754 (8th Cir. 2003). In determining the reasonable hourly rate for the relevant legal community, courts typically consider the ordinary rate for similar work in the community in which the case is litigated. *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001).

Defendants argue that Schwiebert's hourly rate fails to account for his status as a solo practitioner—and, Defendants argue, a solo practitioner's lower hourly rate—and that he has not shown that his $400 hourly rate is comparable to the rates of other Twin Cities attorneys in FDCPA matters. (Defs.' Opp'n at 7–10.) Rather, they contend, a reasonable hourly rate for Plaintiff's counsel is $300. (*Id.* at 10–11.)

The Court is not persuaded that because Schwiebert is a solo practitioner, a lower reasonably hourly rate should automatically apply. However, because solo practitioners often lack support staff and may sometimes perform work that could be considered administrative in nature, the Court will consider Defendants' specific objections, if any, to hourly time entries on this basis.

As to the comparability of Schwiebert's hourly rate to Twin Cities attorneys performing similar work, in *Gupta v. Arrow Financial Services, LLC*, No. 09-CV-3313 (SRN/SER), 2012 WL 1060054, at * 1–2 (D. Minn. Mar. 29, 2012), this Court awarded fees to a local consumer law attorney at counsel's requested hourly rate of $425. Defendants distinguish *Gupta*, however, noting that the case involved intensive discovery, and the petition was supported by a local attorney's affidavit that attested to the reasonableness of the hourly rate. (*See* Defs.' April 27, 2018 Letter at 2.)

As in *Gupta*, Schwiebert's submission is supported by a declaration from a fellow attorney in the Twin Cities. Granted, unlike *Gupta*, 2012 WL 1060054, at *2, this case did not involve discovery, but *Gupta* was also decided six years ago, when billing rates were presumably lower. Moreover, in *Gupta*, this Court cited other decisions supporting an hourly billing rate of between $350–450 in consumer law cases. *See id.* (citing *Poechmann v. Alerus Financial,* 10–CV–4186 (SRN/FLN) (D. Minn. Jan. 20, 2012) [Doc. No. 62] (awarding plaintiff's lead local counsel, who possessed over 40 years' experience, a $400–450 hourly rate in a class action suit); *Phenow v. Johnson, Rodenberg & Lauinger, PLLP,* 10–CV–2113 (DWF/JJK), 2011 WL 710490, at *2 (D. Minn. Mar. 1, 2011) (awarding a $350 hourly rate in an FDCPA case); *Wiley v. A & K Auto Sales*, 06–

CV–4611 (DWF/AJB) (D. Minn. Mar. 5, 2010) (awarding a rate of $400 per hour to plaintiff's counsel); *Hixon v. City of Golden Valley,* 06–CV–1549 (RHK/JSM), 2007 WL 4373111, at *2 (D. Minn. Dec. 13, 2007) (awarding plaintiff's lead attorney a $400 hourly rate).

Nonetheless, Defendants contend that the $350 per hourly rate in *Kuntz* is "more on-point" than the approved billing rate in *Gupta*. (Defs.' April 27, 2018 Letter at 2.) While the consumer law attorneys in *Kuntz* had requested fees at hourly rates of $500 and $450 per hour, respectively, Judge Ericksen cited the attorneys' "history of litigation," and found that the median hourly rate for consumer law attorneys in Minnesota was $350. *Kuntz*, 2017 U.S. Dist. LEXIS 123498, at *6–7. However, the Court in *Kuntz* relied upon the 2015–16 Burdge Report's data concerning "the market average for Minnesota," as opposed to the Twin Cities-specific market. *See id.* at *7. Moreover, as Schwiebert asserts, even as to Twin Cities-specific billing rates, while the Burdge Report identified a 2015–16 median hourly rate for all attorneys in Minneapolis of $350, that rate reflected a median years-in-practice rate of 12.5 years. (Schwiebert Decl. ¶ 33; *see* Burdge Report at 265). The Court agrees with Plaintiff's counsel that while that rate is appropriate for Twin Cities consumer law attorneys with 12.5 years of experience, more experienced attorneys command higher billing rates.

The Court finds that the requested hourly rate of $400 is reasonable. Plaintiff's counsel has several years of experience in consumer law, and over twenty years of experience in litigation. Although Defendants argue that only six years of Schwiebert's 20-plus years of experience is in consumer law, he has handled over 50 FDCPA claims in

12

Minnesota, (Schwiebert Decl. ¶ 7), and has been an active litigator throughout his career. Moreover, the Swenson Declaration attests to Schwiebert's competence, reputation, and experience. (*See* Swenson Decl. ¶¶ 9–13.) Again, the most apposite reference is to rates charged by consumer law attorneys in the Twin Cities, which, as noted above, have ranged between $350–450. And although Judge Ericksen did not award the two highly experienced Twin Cities consumer law attorneys in *Kuntz* fees at their requested hourly rates, they both billed at rates higher than the $400 that Plaintiff's counsel seeks here. These comparator Twin Cities billing rates lend further support to the reasonableness of Schwiebert's billing rate. Moreover, Schwiebert's hourly rate was deemed reasonable by a Hennepin County judge in a state court fee award. (Schwiebert Decl. ¶ 24) (citing *Rosario v. Kariel Staging & Décor, Inc.*, No. 27-cv-16-13140 (Henn. Cnty. Dec. 15, 2017 [Doc. No. 88].)

## 2. Hours Expended

Defendants also argue that Plaintiff's counsel's expended hours are unreasonable and excessive.[3] They challenge the following expenditures of time: (1) 1.4 hours for

---

[3] As a general matter, Defendants claim that the total hours expended are not commensurate with fee awards in cases in this District of similar complexity and duration. (Defs.' Opp'n at 13) (citing *Ash,* 2014 U.S. Dist. LEXIS 123493, at *3 (awarding plaintiff's counsel their requested attorneys' fees in the amount of $2,475 in an FDCPA case where debt collector responded to complaint with a Rule 68 offer); *Young v. Am. Credit & Collections, LLC*, No. 11-cv-3288 (SRN/JSM), Findings of Fact & Conclusions of Law [Doc. No. 15] at 5 (D. Minn. Aug. 29, 2012) (awarding attorneys' fees of $3,322.50 in FDCPA case in which the plaintiff served a complaint and moved for default judgment); *Young v. Diversified Consultants, Inc.*, 554 F. Supp. 2d 954, 956–57 (D. Minn. 2008) (awarding attorneys' fees of $3,705.20 in FDCPA case where the plaintiff served a complaint, participated in a Rule 26(f) conference, and then received a Rule 68 offer)). While the amount of awards in similar cases is a factor that courts may

13

drafting a retainer agreement and an *in forma pauperis* filing-fee waiver application for Plaintiff; (2) 1.2 hours spent on a state court case, which they contend is unrelated to this action; (3) 4.3 hours to accept the Offer of Judgment; (4) non-specific time expended on clerical and administrative tasks; and (5) 15.2 hours incurred in preparing this petition. (Defs.' Opp'n at 12–17.) Additionally, Defendants seek a deduction of 1.5 hours from a total of 2.6 hours claimed for composing and finalizing the Complaint, arguing that much of the Complaint consists of text that was merely transposed from documents in the underlying collection action. (*Id.* at 15.) Similarly, Defendants argue that 2.5 hours spent researching, discussing, meeting with Price, and accepting Defendants' Offer of Judgment should be reduced by 1.5 hours, to a total of one hour. (*Id.* at 15–16.) In short, Defendants assert that Plaintiff's reasonable attorneys' fees should be limited to five hours, and no fees should be awarded for the time expended in preparing the fee petition. (*Id.* at 16.)

The Court finds that counsel's billing entries reflect reasonable work. The time expended was for necessary tasks, including reviewing the case, analyzing the underlying state court pleadings filed in Defendants' state court action against Price and Price's own documents, discussing the case with Price, researching the viability of her potential

---

consider, *see Hensley*, 461 U.S. at 430 n.3, this precedent is less helpful here, given that differences in fee awards may be attributable to a variety of factors, including the presence of unique or unusual facts, the different billing rates of counsel, the passage of time between older fee award cases and the instant case, and the fact that, due to default judgment, a fee request is unopposed, *see American Credit*, Findings of Act & Conclusions of Law at 5, or that the court awarded the total requested amount, *see Ash*, 2014 U.S. Dist. LEXIS 123493, at *7–8.

claims, and drafting the 41-page Complaint and fee-waiver application. (*See* Schwiebert Decl. ¶ 16.) The Court therefore declines to make Defendants' requested deduction for 1.4 hours purportedly spent on drafting a retainer agreement and the filing-fee waiver application.

Although Defendants challenge 1.2 hours for counsel's work on an "unrelated state court case," (Defs.' Opp'n at 12), two entries on counsel's billing statement, totaling 1.2 hours, refer to reviewing documents in a state court action—namely, Defendants' underlying debt collection action that forms the basis for Plaintiff's FDCPA claims here. (*See* Billing Statement at 1.) The state court action was, in fact, related to this case. And, Schwiebert attests that the billed time was not for work related to the defense of the state court case. (Schwiebert Decl. ¶ 15.) The Court finds that this time was reasonably expended.

Defendants also argue that counsel unreasonably expended 4.3 hours on a "straightforward Offer of Judgment," but Schwiebert's billing statement reveals that this time was spread over five separate days, in six billing entries, and involved communication with his client, research concerning the offer and this Court's decisions concerning FDCPA fee awards, review of billing information, drafting of a response to Defendant Messerli & Kramer and a review of its reply, and a review of the language of the Offer of Judgment. While Defendants characterize this action as a relatively straightforward FDCPA case, many of the facts of the underlying collection action are unusual, such as the allegation concerning the forged Answer and alleged misstatements

in a declaration filed with the court. The Court will not deduct 4.3 hours from the fee award.

Nor will the Court make deductions of 1.5 hours each for time expended in composing and drafting the Complaint, or for work done in connection with the Offer of Judgment. This work was necessary and not excessive. Moreover, as Plaintiff's counsel notes, because Price suffers from disabilities, counsel was required to be particularly deliberate and thorough in his client communications. This time was reasonably expended.

Defendants further argue that Plaintiff's counsel billed for clerical and administrative tasks, but Defendants do not provide specific examples. Schwiebert notes that he exercised proper billing judgment and reduced the amount of time charged for certain tasks or to account for redundancy or overlap. (Schwiebert Decl. ¶ 20.) Moreover, although a paralegal assisted in the work of Plaintiff's counsel, he did not include any paralegal time in the fee request. (*Id.* ¶ 19.) Based on the Court's review of the billing entries, the Court finds no improper billing for clerical and administrative work.

As noted, Plaintiff seeks reimbursement for the attorneys' fees incurred in bringing the instant motion. Such compensation is permissible. *See Bankey v. Phillips & Burns, LLC*, No. 07-cv-2200 (DWF/RLE), 2008 WL 2405773, at *3 (D. Minn. June 11, 2008) (including reasonable portion of fees incurred in preparing fee petition in award of FDCPA attorneys' fees). However, Defendants challenge this portion of Plaintiff's fee request, arguing that Schwiebert rejected Defendants' initial offer to pay for $1,750 in

attorneys' fees, without providing a counter offer. (Defs.' Opp'n at 16–17.) Thus, they assert that the 15.2 hours of time billed in connection with this fee petition was unnecessarily incurred. (*Id.*)

In support of their position, Defendants cite *Olson v. Messerli & Kramer, P.A.*, No. 07-cv-439 (PJS/RLE), 2008 U.S. Dist. LEXIS 29118, at *8 (D. Minn. April 9, 2009), in which the Court denied attorneys' fees incurred in preparing the fee petition. But a primary basis for the denial of fees in *Olson* was that during the parties' fee negotiations, plaintiff's counsel had refused to provide opposing counsel with documentation in support of their claimed fees. *Id.* That is not the case here, because Schwiebert shared his billing statement with defense counsel, as Messerli & Kramer's letter to him reflects. (*See* Defs.' April 27, 2018 Letter at 1) ("Thank you for your Statement of Services regarding this matter.") The Court therefore declines to deduct the fees incurred in filing this fee petition from Plaintiff's award of attorneys' fees and finds that the fees were reasonably incurred.

In conclusion, the Court finds that the lodestar here, reflecting an hourly rate of $400 per hour, multiplied by 15.2 hours of time, is $6,080. Because the Court finds that this lodestar amount constitutes a reasonable fee award, s*ee City of Burlington,* 505 U.S. at 562, the Court declines to increase or decrease it. *See Hensley*, 461 U.S. at 434 (noting that after determining the lodestar, courts may adjust the fee upward or downward).

## IV. ORDER

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Motion for Attorneys' Fees [Doc. No. 12] is **GRANTED**;

2. The Court awards Plaintiff attorneys' fees in the amount of $6,080; and

3. Plaintiff's Motion for Leave to File a Reply, or in the Alternative, to Amend Deadlines Pursuant to Rule 6 [Doc. No. 19] is **GRANTED**.


Dated:  October 17, 2018                              s/Susan Richard Nelson
                                                     SUSAN RICHARD NELSON
                                                     United States District Judge